Filed 4/23/14  In re A.L. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | C074320 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.W. et al.,<br><br>Defendants and Appellants. | (Super. Ct. No. JD231624) |

J.L., the father, and M.W., the mother of the minor A.L. appeal from the juvenile court's orders terminating their parental rights.  (Welf. & Inst. Code, §§ 395, 366.26.)[1] Father contends trial counsel was ineffective in allowing Interstate Compact on the Placement of Children (ICPC) evaluation to be used as justification for denying him

---

[1]  Subsequent undesignated statutory references are to the Welfare and Institutions Code.

1

custody of the minor. He further contends the orders at the hearing setting the section 366.26 were not supported by substantial evidence and he was not properly notified of his right to file a writ petition. Mother joins father's contentions. We shall affirm the juvenile court's orders.

BACKGROUND

In May 2011, the Sacramento County Department of Health and Human Services (DHHS) filed a dependency petition (§ 300) alleging jurisdiction over the minor A.L. after mother left the five-year-old minor in the care of a family friend without making provisions for the child's support and the friend was no longer willing to care for the minor. The juvenile court detained the minor later that month.

Mother said at the detention hearing that father lived in Oregon. He was present at the minor's birth, living with mother and the minor for the first 10 months of the child's life and then off and on through 2009. Father had been ordered to pay $328 monthly child support but never paid.

The June 2011 jurisdiction/disposition report related that mother said crack cocaine was her drug of choice, and she had used the drug since she was 13. Mother tested positive for methamphetamine, amphetamine, and cocaine in May 2011. She was diagnosed with bipolar disorder, agoraphobia, manic disorder, and anxiety disorder. She reported having been diagnosed with colon cancer that was in remission, but cancer was found in her left lung the previous year.

The report additionally noted that father's whereabouts were unknown. The minor said she last saw her father when she was three and a half years old. Asked who she most wanted to live with, the minor replied, " 'My mommy, my sissy, my daddy.' "[2]

---

[2] The minor has a half-sister who was 17 when the dependency started and is not a party to this appeal.

An amended petition was filed in June 2011, adding allegations regarding mother's substance abuse and mental health problems. The juvenile court sustained the amended petition and ordered reunification services for mother at a jurisdiction and disposition hearing later that month.

In December 2011, DHHS located father in Oregon, where he lived with his girlfriend and their one-year-old son. Father told the social worker he had no criminal or child welfare history, was currently in school, and had been unable to locate mother or the minor since mother removed the child from his care over a year ago. He asked for his address to remain confidential from mother. Father requested an ICPC for possible placement of the minor and asked for counsel. He wanted visitation and phone contact with the minor and to be assessed for possible placement. DHHS started the ICPC in December 2011. Counsel was appointed for father later that month. A social worker spoke with father in January 2012 and gave him counsel's name and contact information. Father said when the minor was a baby, mother left the child with him for one to two weeks while she went to California without saying where she was. Mother and the minor moved to California after mother and father broke up. In February or March 2010, the maternal aunt told father he had to pick up the minor because mother had left. Father went to Sacramento and picked up the minor from a " 'crackhouse' " and took her back to Oregon with him. The minor remained with him until the end of June 2010 when the minor was returned to mother after she told the police that she had custody of the minor.

The social worker reported that father lives with his girlfriend, their one-year-old son, and the girlfriend's four-year-old son in a three bedroom, two bathroom home in Oregon. Father had been in a relationship with the girlfriend for almost three years, and the girlfriend knows the minor from the last time the minor lived with father. They would like to have the minor move in with them and are able to provide for her. Father said he tried to maintain contact with the minor but lost contact after mother moved

3

several times and her phone was cut off. Father and his girlfriend reported no criminal history except father was convicted of driving under the influence about three years ago.

Father's counsel requested an expedited ICPC for father and reunification services for him at the January 2012 six-month hearing. The juvenile court found father was the presumed father, granted the request for priority placement on the ICPC, and ordered DHHS to assess whether services should be provided to father. Services were continued for mother.

The March 2012 report stated that father's ICPC was denied. Father had convictions for driving under the influence of alcohol in November 2006 and April 2010. He had a warrant for a probation violation on the most recent conviction for failing to report for an alcohol treatment evaluation and to set up monitoring for house arrest. Father said he did not have an alcohol problem and is able to stop drinking after two beers. He had minimally complied with the Oregon social worker's efforts to assess his home and life situation. The social worker asked him about the probation violation; father said the judge told him at a December 2011 hearing that there was no deadline to set up the monitoring. When asked for the paperwork showing this change in the deadline, father did not return any paperwork to the social worker and did not return her phone calls.

At a March 2012 interim hearing, father's counsel objected to continued out-of-home placement and requested services for father. The juvenile court ordered services for father with all other orders remaining in effect. The court also noted DHHS was unable to complete the ICPC due to father's noncompliance.

In April 2012, county counsel informed the juvenile court that additional findings were needed to keep placement from father, the noncustodial parent. The juvenile court set a hearing for one week later. At the hearing, the juvenile court found by clear and convincing evidence that it was detrimental to place the minor with father in light of his

failure to cooperate on the ICPC and his recent convictions for driving under the influence.

The June 2012 report recommended terminating mother's services and an additional six months of services for father. Mother did not regularly attend visits or communicate with the social worker. In May 2012, mother told the social worker she was homeless after leaving her abusive fiancé and was diagnosed with colon cancer. Mother said she was given a prognosis of six months about two months ago.

Father reported he had about one and a half years to finish his bachelor's degree in computer engineering. He was attending weekly parenting classes since May 2012 and received a certificate of completion after attending five of the scheduled classes. The instructor said father participated regularly and was very engaged in the class. Father had not yet completed his assessment for substance abuse treatment.

The juvenile court continued services for father and terminated mother's services at the June 2012 12-month hearing.

DHHS recommended terminating father's services with a permanent plan of adoption in the November 2012 18-month report. While father completed parenting and outpatient substance abuse treatment, he had not contacted DHHS since July 2012. Father's cell and home phone were disconnected in August 2012. He had not contacted the minor since July 2012 and had not responded to the social worker's attempts to contact him. Prior to July 2012, his contact with the minor and DHHS was very inconsistent.

The juvenile court terminated father's services at the November 2012 18-month hearing. Father was not present but was represented by counsel. Notice of father's right to file a writ petition challenging the juvenile court's orders was mailed to father at an address in Bend, Oregon with a 97701 ZIP code.

In December 2013, a proof of service was executed by a process service company indicating notice of the section 366.26 hearing was served on father at a "confidential

address" by leaving copies with or in the presence of "Candice" and that she was informed of the general nature of the papers. DHHS submitted a declaration in January 2013 stating that the process server attempted to serve notice of the section 366.26 hearing on father by substitute service at a Morse Avenue, Sacramento address to "Brandie," who affirmed that the "person served" was an occupant. DHHS also sent notice of the section 366.26 hearing by mail to the Morse Avenue address.

At a January 2013 hearing, the juvenile court found service insufficient as nothing in the proofs of service indicating that father lived at that address rather than in Oregon. The court continued the matter for proper service on father. Later that month, DHHS submitted a declaration stating that the process server attempted to serve father notice of the section 366.26 hearing at his confidential address located in a foreign state by substitute service on "Candice," who affirmed that the "person served" was an occupant. DHHS indicated father's address was on file as confirmed by father's counsel in court and by a law enforcement printout. At a subsequent hearing, father's counsel affirmed the most recent notice was served at father's mailing address.

The section 366.26 report noted the minor was hard to place due to her age and behavioral issues. However, the minor's foster parent was very attached to her and was interested in adoption. The minor understood what adoption meant and wanted to be adopted by her foster parent.

The juvenile court terminated parental rights with a permanent plan of adoption.

DISCUSSION

I

Father contends trial counsel was ineffective for allowing him to be denied placement due to his failure to complete the ICPC.

The juvenile court's orders continuing the minor's foster placement and denying father custody were appealable as orders entered after judgment. (§ 395.) "A consequence of section 395 is that an unappealed disposition or postdisposition order is

6

final and binding and may not be attacked on an appeal from a later appealable order. [Citations.]" (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150.) "The principle -- which for convenience we will identify as the 'waiver rule'--that an appellate court in a dependency proceeding may not inquire into the merits of a prior final appealable order on an appeal from a later appealable order is sound" and applies "even though the issues raised involve the important constitutional and statutory rights to counsel and to the effective assistance of counsel." (*Id.* at p. 1151.) This principle is based on sound considerations of finality and the expeditious resolution of dependency matters. "[D]isregarding the rule would subvert the predominant interests of the child and the state in finality and reasonable expedition. [Citations.]" (*Id.* at p. 1156.)

Father's bid to avoid the bar of waiver in this case fails. It is true that, under certain circumstances, due process considerations may prevent enforcement of the waiver rule. (*In re Janee J.* (1999) 74 Cal.App.4th 198, 208.) However, "resort to claims of ineffective assistance as an avenue down which to parade ordinary claims of reversible error is . . . not enough . . ." to avoid the bar of waiver. (*Id.* at p. 209.) In order to claim the due process exception, father must allege a "defect that fundamentally undermined the statutory scheme so that [he] was kept from availing [himself] of its protections as a whole." (*Ibid.*)

Father alleges trial counsel was ineffective in failing to realize that an ICPC was not necessary for him to gain custody of the minor. This is not the type of error which, if true, would fundamentally undermine father's protections in this dependency case. Father did not have an absolute right to custody of the minor. The juvenile court could continue the minor's foster placement if it found by clear and convincing evidence that the placement would be detrimental to the child's safety, protection, or physical or emotional well-being. (§ 361.2, subd. (a); *In re Luke M.* (2003) 107 Cal.App.4th 1412, 1426.) The alleged error did not deprive the father of reunification services, nor his right to a hearing at the various stages of the dependency, nor his right to counsel. In short,

father does not allege the type of fundamental error that would support an exception to the forfeiture rule. Since father did not appeal either of the juvenile court's placement orders, his contention is forfeited on appeal.

Father's claim also fails on the merits. In order to establish ineffective assistance of counsel, father has the burden of establishing trial counsel's representation fell below the objective standard of reasonable representation and that he was prejudiced as a result of counsel's errors. (*In re Emilye A.* (1992) 9 Cal.App.4th 1695, 1711.) "[A] court may reject a claim [for ineffective assistance] if the party fails to demonstrate that but for trial counsel's failings, the result would have been more favorable to the defendant. [Citation.]" (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1180.)

Father correctly points out that "compliance with the ICPC is not required for placement with an out-of-state parent." (*In re John M*. (2006) 141 Cal.App.4th 1564, 1575.) Even if the juvenile court erroneously relied on the negative ICPC when it initially denied father's request for custody in the March 2012 order, father cannot establish prejudice. The juvenile court's April 2012 order denied father custody after finding by clear and convincing evidence that placement with father would be detrimental to the minor. This finding, which did not rely on father's failure to complete the ICPC, established that the juvenile court would not have ruled in his favor even if trial counsel objected to using the ICPC as the basis for denying placement with father.[3]

## II

Father contends there is insufficient evidence to support the juvenile court's finding that returning the minor to him would create a substantial risk of detriment to the

---

[3] The ICPC itself did not prejudice father, since it is an appropriate means for securing services for an out-of-state nonoffending parent and for gathering information about that parent. (*In re Johnny S.* (1995) 40 Cal.App.4th 969, 979.)

minor.  Anticipating a claim of forfeiture, he further contends that the notice of his right to seek writ review of the juvenile court's order was insufficient as it was addressed to the wrong ZIP code.

An order setting a section 366.26 hearing is not appealable.  Review of the propriety of a setting order may be obtained only by petition for extraordinary writ review of the order.  (§ 366.26, subd. (*l*); *Joyce G. v. Superior Court* (1995) 38 Cal.App.4th 1501, 1507, fn. 3.)  On appeal from the order subsequently made at the section 366.26 hearing, a party may get review of the setting order only if:  "(1) the party filed a timely petition for extraordinary writ review of the setting order; (2) the petition substantively addressed the specific issues to be challenged and supported the challenge by an adequate record; and (3) the appellate court summarily denied or otherwise did not decide the petition on the merits.  [Citations.]"  (*In re Cathina W.* (1998) 68 Cal.App.4th 716, 720.)  If a party fails to comply with these requirements, review of the findings and orders made by the juvenile court in setting the hearing under section 366.26 is precluded.  (§ 366.26, subd. (*l*)(2).)

When a court orders a hearing under section 366.26, the court is required to advise all parties, should they wish to preserve any right to review on appeal of the order setting the section 366.26 hearing, they are required to seek an extraordinary writ.  (§ 366.26, subd. (*l*)(3)(A); Cal. Rules of Court, rule 5.590(b).)  This advice is given orally to all parties present at the hearing and by first-class mail to parties not present.  (§ 366.26, subd. (*l*)(3)(A); Cal. Rules of Court, rule 5.590(b).)  When mailed, the notice is sent by first-class mail to the last known address of the relevant party.  (§ 366.26, subd. (*l*)(3)(A); Cal. Rules of Court, rule 5.590(b).)  A violation of the notice requirements excuses a parent from the duty to file a writ and allows him or her to assert any issues which arose at the setting hearing in an appeal from orders terminating parental rights.  (*In re Rashad B.* (1999) 76 Cal.App.4th 442, 450.)

9

The clerk of the juvenile court mailed the writ notice to father at 645 SE Wilson Avenue, Bend, Oregon 97701. We granted father's motion to take judicial notice that the ZIP code for this address is 97702-1417, according to the United States Postal Service's website.[4] Father contends addressing the writ notice to the wrong ZIP code is a fatal defect which excuses him from having to file a writ petition to preserve his appellate rights.

The problem with father's argument is we do not know what address he gave to the juvenile court and DHHS. A parent in a juvenile case is required to provide his or her address, which will be used "for the purposes of notice of hearings and the mailing of all documents related to the proceedings." (Cal. Rules of Court, rule 5.534(m)(1); § 316.1 subd. (a).) Father requested his address remain confidential and there is no mention of father's address in the record before the clerk's writ notice declaration. Father's address is mentioned in two other places. The notice of father's right to appeal the section 366.26 hearing was mailed by the juvenile court clerk to the same address and 97701 ZIP code as was used in the writ notice. Father's notice of appeal, signed by trial counsel, contains an address for the Oregon State Penitentiary in Salem, Oregon. In the absence of any other part of the record showing whether or not father gave a 97701 or 97702 ZIP code as his designated address, we cannot determine whether the writ notice complies with the requirement that it be sent to the last address provided by father. Since father has failed to carry his burden of establishing inadequate notice, his contention is forfeited on appeal.

Even assuming the court failed in its duty to provide notice, father cannot prevail. At the 18-month review hearing, "the court shall order the return of the child to the

---

**4** <https://tools.USPS.com/go/ZipLookupAction>.

10

physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.22, subd. (a).) "[F]ailure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental." (*Ibid*.) "If the child is not returned to a parent or legal guardian, the court shall specify the factual basis for its conclusion that return would be detrimental." (*Ibid*.) We review the juvenile court's finding under the substantial evidence standard, construing the evidence most favorably to the court's ruling and resolving all conflicts in the evidence in favor of that ruling. (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400-1401.)

While there is evidence father completed his services, he had effectively abandoned the minor and the dependency for four months by the time of the 18-month hearing in November 2012. This left the juvenile court with few options. At the 18-month hearing, the juvenile court normally must return the minor or terminate services; continuing services is granted only in rare instances and when warranted by the best interests of the child. (*In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1798-1799.) Cases recognizing a court's discretion to continue a dependency case beyond 18 months typically have involved the provision of inadequate or no reunification services. (See, e.g., *In re David D.* (1994) 28 Cal.App.4th 941, 953; *In re Dino E.* (1992) 6 Cal.App.4th 1768, 1778.) Having no parent to which the minor could be returned is substantial evidence supporting the juvenile court's decision to terminate services at the 18-month hearing.

DISPOSITION

The juvenile court's orders are affirmed.

    BLEASE        , Acting P. J.

We concur:

    HULL        , J.

    MAURO        , J.